```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
TIMOTHY PRESMARITA,                                         :
                                                            :
                              Plaintiff,                    :
                                                            :            17-cv-1118 (KBF)
              -v-                                           :
                                                            :            OPINION & ORDER
METRO-NORTH COMMUTER RAILROAD                               :
COMPANY,                                                    :
                                                            :
                              Defendant.                    :
                                                            :
------------------------------------------------------------X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: December 21, 2017

KATHERINE B. FORREST, District Judge:

On February 14, 2017, plaintiff Timothy Presmarita filed suit against Metro-North Commuter Railroad Company ("Metro-North") seeking damages and injunctive relief after he was injured trying to disembark from a train at Grand Central Station. The core federal assertion is that Metro-North was required to provide him with a wheelchair at the point of disembarkation and to the street. He asserts that Metro-North's failure to do so violated his rights to equal access to a public accommodation under Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131, et seq., and pursuant to Section 504 of the Rehabilitation Act of 1973 (the "Rehabilitation Act"), 29 U.S.C. 794. Additionally, he has asserted state law claims that mirror these but also broadly capture specific conduct by Metro-North pursuant to which plaintiff alleges Metro-North assumed a duty of care which it then breached.

On April 17, 2017, defendant filed a motion to dismiss, arguing that Metro-North had no obligation under the ADA and Rehabilitation Acts to provide plaintiff with a wheelchair, and that the Court should dismiss the remainder of the claims for lack of supplemental jurisdiction. (ECF No. 14.) On August 30, 2017, the Court noted that all previous argument had assumed that Metro-North was subject to Title II, Part A of the ADA, which applies to public entities broadly, when in fact it seemed that commuter railroads such as Metro-North were actually subject to Part B, which applies only to public entities providing public transportation; thus, it requested supplemental briefing. (ECF No. 19.) The parties submitted additional briefing at the end of September 2017—both sides agreed that Part B was the relevant law. (ECF Nos. 20, 21, 25, 26.)

Because the Court finds that the relevant service at issue is point-to-point transportation on the rail line, and not transportation within a station to the street, the Court further finds that the ADA does not require Metro-North to provide its customers with wheelchairs, at the point of disembarkation and to the street. Accordingly, the Court GRANTS the motion to dismiss in its entirety.

I.    FACTUAL BACKGROUND

The factual allegations discussed below are drawn from the complaint (ECF No. 1, Compl.) and assumed true for the purposes of this decision.

Plaintiff is a resident of New York who was injured in an automobile accident in or about 2001, in which he broke his neck; he has had thirteen surgeries as a result of this accident. (Compl. ¶¶ 10–11.) Even after these surgeries, plaintiff has

limited functionality in his cervical spine, right leg, and right arm, and thus requires a wheelchair to walk more than a few steps. (Id. ¶¶ 12–13.)

Defendant is a public benefit corporation organized pursuant to the Public Authorities Law of the State of New York, with its principal place of business in New York; it operates commuter railroad service between New York City and locations surrounding New York, including Connecticut. (Id. ¶¶ 14–16.)

On November 8, 2016, defendant was operating a commuter train between New Haven, Connecticut, and Grand Central Station. (Id. ¶ 17.) Plaintiff purchased a ticket on the 9:55 p.m. train, due to arrive in New York at 11:47 p.m. (Id. ¶ 22.) Plaintiff traveled with a friend, Javier Quinonze, so that he would have assistance as he traveled. (Id. ¶ 23.) Upon his arrival at his departure point, Union Station in New Haven, plaintiff requested a wheelchair in order to navigate the station and platform and to board the train. (Id. ¶ 24.) He was told by defendant that no wheelchair was available; he therefore boarded with the assistance of his friend, who carried him through the station. (Id. ¶¶ 25–26.)

Plaintiff alleges that once on board, two separate conductors employed by defendant approached him and asked if he would require a wheelchair upon arrival at Grand Central; plaintiff said yes, and both conductors indicated that they would call ahead to Grand Central to make the necessary arrangements. (Id. ¶¶ 27–30.) Plaintiff was informed that he should wait on board the train until everyone else had disembarked, at which time defendant's employees would assist him in disembarking with a wheelchair. (Id. ¶ 31.)

The train arrived at Grand Central at or about 11:47 p.m.; the wheelchair was not waiting on the platform. (Id. ¶¶ 33–35.) Despite several interactions with conductors about the wheelchair, plaintiff and his friend waited for more than one hour on the empty train. (Id. ¶¶ 33–37.) At or about 1 a.m., plaintiff attempted to exit the train and station without a wheelchair and with the assistance of his friend. (Id. ¶ 37.) While walking, plaintiff fell twice and injured his left ankle. (Id. ¶¶ 38–42.) Quinonze and Presmarita asked a Station Master if they could use an orange motorized cart to help them traverse the station; they were refused. (Id. ¶¶ 44–47.) The Station Master further informed plaintiff that there was an ample supply of wheelchairs, but a lack of personnel to push them. (Id. ¶ 49.) Quinonze offered to push plaintiff; the Station Master told him this was not allowed. (Id. ¶ 51.)

At this time, the Station Master offered a wheelchair to the station's exit, which was pushed by another of defendant's employees. (Id. ¶ 52.) Initially this employee refused to take plaintiff to the curb, however when plaintiff offered him a $20 tip, he agreed. (Id. ¶¶ 53–54.) Plaintiff got into a taxi without tipping the employee. (Id. ¶ 55.)

Plaintiff was subsequently diagnosed with a left ankle injury and placed in a soft cast. (Id. ¶¶ 58–59.)

II. LEGAL STANDARDS

A. Motion to Dismiss

On a motion to dismiss, this Court accepts as true all well-pleaded factual allegations. See Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949–50 (2009). This means that the Court must accept plaintiff's factual allegations in his complaint as true and draw all reasonable inferences in plaintiff's favor. See Famous Horse Inc. v. 5th Ave. Photo Inc., 624 F.3d 106, 108 (2d Cir. 2010). To withstand dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 129 S. Ct. at 1949 (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

When ruling on a motion to dismiss under 12(b)(6), a district court errs if it relies on additional materials not included in the pleadings or relies on "factual allegations contained in legal briefs or memoranda." Friedl v. City of New York, 210 F.3d 79, 83–84 (2d Cir. 2000).

B. ADA/Rehabilitation Acts

Title II of the ADA requires that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Section 504 of the Rehabilitation Act requires that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under

5

any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). The Second Circuit "treat[s] claims under the two statutes identically." Henrietta D. v. Bloomberg, 331 F.3d 261, 272 (2d Cir. 2003.)

To establish a prima facie violation under these acts, a plaintiff must show that: 1) he or she is a qualified individual with a disability; 2) the defendant is subject to the ADA or Rehabilitation Acts; and 3) that he or she was denied the opportunity to participate in or benefit from defendant's services, programs, or activities, or was otherwise discriminated against for reason of his or her disability. Id. "Under both statutes, a defendant discriminates when it fails to make a reasonable accommodation that would permit a qualified disabled individual 'to have access to and take a meaningful part in public services.'" McElwee v. Cty. of Orange, 700 F.3d 635, 640–41 (2d Cir. 2012) (quoting Powell v. Nat'l Bd. of Med. Exam'rs, 364 F.3d 79, 85 (2d Cir. 2004). "A 'reasonable accommodation' is one that gives the otherwise qualified plaintiff with disabilities 'meaningful access' to the program or services sought." Henrietta D., 331 F.3d at 282 (quoting Alexander v. Choate, 469 U.S. 287, 301 (1985). The ADA and Rehabilitation Acts "do not require that substantively different services be provided to the disabled, no matter how great their need for the services may be." Wright v. Giuliani, 230 F.3d 543, 548 (2d Cir. 2000).

Title II of the ADA is divided into two parts—Part A applies to public entities generally, and Part B applies to public entities providing transportation, such as Metro-North. See 42 U.S.C. §§ 12131–34; 12161–65. As the Second Circuit has

6

noted, "the Secretary of Transportation has the exclusive authority to issue final regulations implementing Part B." Abrahams v. MTA Long Island Bus, 644 F.3d 110, 115 (2d Cir. 2011); see 42 U.S.C. §§ 12143(b), 12149, 12164.

While the Department of Transportation ("DOT") has issued several regulations requiring that various modes of transportation—airplanes, and ships, for example—provide wheelchairs and assistance, it has issued no similar regulation dealing with commuter railroads. See, e.g., 49 C.F.R. § 39.81(b) (requiring vessel operators to assist passengers in moving from the terminal entrance to the vessel); 14 C.F.R. § 382.91 (requiring assistance to disabled passengers in navigating through airports).

III. DISCUSSION

A. ADA Claim

For the purposes of this motion, defendant assumes without admitting that plaintiff has made out the first two prongs of his prima facie case—1) that he is a qualified individual with a disability; and 2) that Metro-North is subject to the ADA and Rehabilitation Acts. It argues, however, that it provided meaningful access to its services, and therefore that plaintiff cannot make out the third prong of an ADA/Rehabilitation Act claim, and as such that he fails to state a prima facie case.

Plaintiff argues that while Part A is clear—28 C.F.R. §35.135 states without ambiguity that it "does not require a public entity to provide individuals with disabilities personal devices, such as wheelchairs"—Part B has no such clear rule. He further argues that the fact that other transportation providers, such as

7

airports, are required to provide wheelchairs, is persuasive evidence that Metro-North should provide a similar service. He points to 49 C.F.R. § 37.61, which states that "a public entity shall operate a designated public transportation program or activity conducted in an existing facility so that, when viewed in its entirety, the program or activity is readily accessible to and usable by individuals with disabilities." Plaintiff argues that to view Metro-North's services in their entirety is to consider the navigation of its station and platforms, and that these were not readily accessible to him.[1]

Defendant rejects plaintiff's arguments, stating that its stations and trains are accessible to the disabled,[2] that plaintiff has made no allegations that he would have been denied meaningful access had he brought his own wheelchair, and that it has no obligation to provide a service to plaintiff that it does not provide to other passengers. Though sympathetic to plaintiff's difficulties, the Court agrees with defendant.

The ADA is clear—it does not require wheelchairs to be provided at commuter rail stations. Where the DOT wished to do so—in airports and for ships, for example—it promulgated regulations affirmatively requiring wheelchair services to be provided to wheelchair-bound passengers. See 14 C.F.R. § 382.91; 49 C.F.R. § 39.81(b). It has not, however, done so for trains and commuter railroads.

---

[1] He also points to Pincus v. Nat'l R.R. Passenger Corp., 581 Fed App'x 88 (2d Cir. 2014), in which the Second Circuit remanded a case with similar facts on an Amtrak train. However, the Second Circuit's opinion was limited solely to plaintiff's standing; as such, it does not carry the weight plaintiff gives it here.

[2] Plaintiff makes no allegations as to the facilities at the station or on the train.

Metro-North provides a commuter train service—and critically, it does not offer curb-to-platform service to any passengers—disabled or not.  There are no allegations made here that its stations and trains are not accessible to a wheelchair-bound passenger.  The Court therefore cannot say that plaintiff has been denied meaningful access to the services Metro-North offers.  Thus, plaintiff has failed to make a prima facie case under the ADA and Rehabilitation Acts.  Count I of plaintiff's claim is DISMISSED.

B. Remaining Claims

Without the claims under the ADA and Rehabilitation Acts, this Court declines to exercise supplemental jurisdiction over plaintiff's remaining claims.

The Court notes, however, that plaintiff appears to have stated at least a common law negligence claim that he may choose to pursue in state court.[3]

IV. CONCLUSION

For the reasons stated above, the defendant's motion to dismiss is GRANTED.  The Clerk of Court is directed to terminate the motion at ECF No. 14 and terminate this action.

SO ORDERED.

Dated:      New York, New York
            December 21, 2017

_____
KATHERINE B. FORREST
United States District Judge

---

[3] Indeed, defendant itself seems to acknowledge that the facts as alleged may make out a negligence claim based on plaintiff's reliance on defendant's promises to provide a wheelchair.

9